Opinion
KENNARD, J.
Under California’s Sexually Violent Predators Act (SVPA), convicted sex offenders who have served their prison terms may be *982 involuntarily committed to a state mental hospital if found to be “sexually violent predator[s].” (Welf. & Inst. Code, § 6604; further undesignated statutory references are to this code.) That finding is made after a trial (§ 6603), based on proof beyond a reasonable doubt that the person to be involuntarily committed meets the statutory definition of a sexually violent predator (§ 6604).
The SVPA defines a sexually violent predator as someone who “has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior” if released. (§ 6600, subd. (a)(1), italics added.) At issue here is the meaning of the statutory term “likely” in section 6600, subdivision (a)’s definition of a sexually violent predator. That definition applies at trial, where the trier of fact decides whether the convicted sex offender, after serving the requisite prison term, is to be involuntarily committed.
Recently, in People v. Superior Court (Ghilotti) (2002) 27 Cal.4th 888 [119 Cal.Rptr.2d 1, 44 P.3d 949] (Ghilotti), we construed a different provision of the SVPA pertaining to the initial step in the involuntary commitment proceedings: the requirement that two mental health evaluators agree that the convicted sex offender “is likely to engage in acts of sexual violence without appropriate treatment and custody.” (§ 6601, subd. (d), italics added.) That standard, we concluded, is met when “the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit such crimes if free in the community.” (Ghilotti, supra, at p. 922, original italics.) We now reach the same conclusion with respect to the word “likely” in section 6600, subdivision (a).
I
In 1981, defendant was convicted of forcible rape (Pen. Code, § 261, subd. (a)(2)) and sentenced to state prison for eight years. In 1985, while on parole for the 1981 offense, defendant again committed forcible rape, for which he was in 1986 convicted and sentenced to a prison term of 18 years. Before defendant’s eligibility for release on parole for the 1986 rape conviction, the San Diego County District Attorney petitioned the superior court to have defendant committed to the State Department of Mental Health as a sexually violent predator. (§ 6601, subd. (a).)
At the jury trial on that petition, the prosecution presented evidence on the 1981 and 1986 rape convictions: Both involved defendant’s violent assaults *983 on women who were strangers to him. In the 1981 incident, defendant lured the victim to his home and sexually assaulted her. Four months after his release on parole in 1985, defendant attacked his second victim, whom he beat, bit, and sexually assaulted.
Prosecution witness Mary Miccio-Fonseca, a clinical psychologist, diagnosed defendant as suffering from a “paraphilia” or a “paraphiliac disorder,” which she described as an incurable sexual disorder distinguished by sexual arousal from perverse or unorthodox encounters. Initially, Dr. Miccio-Fonseca described the sexual disorder as paraphilia NOS (Not Otherwise Specified) but she later changed her diagnosis to sexual sadism.[1] Defendant’s score of 4 on the Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR), a clinical tool for evaluating the probability of a sexual offender’s reoffending, indicated a 32.7 percent likelihood that defendant would commit another violent sexual offense within five years and a 48.6 percent likelihood of doing so within 10 years.
Another expert witness for the prosecution, clinical psychologist Charles Jackson, assessed defendant as having two mental disorders: paraphilia NOS manifested by sex with nonconsenting individuals, and antisocial personality disorder. In Dr. Jackson’s opinion, defendant continued to pose a danger to others, which was atypical of sex offenders generally, because the risk of reoffending tends to decrease as the person grows older.
The defense presented the expert testimony of two clinical psychologists, Drs. Theodore Donaldson and Ricardo Weinstein. Both disagreed with the expert testimony presented by the prosecution that defendant suffered from a paraphilia. Specifically, the defense psychologists did not consider defendant to be a sexual sadist, because his primary gratification in forcible sex was sexual rather than the infliction of pain on his victims. Thus, in their view, defendant’s sex offenses were not a product of a mental illness (a requisite for involuntary commitment under the SVPA). According to Dr. Donaldson, the likelihood of defendant’s committing another sexually violent offense *984 was “better than 50 percent probability,” but his doing so would be entirely volitional.
Defendant sought a jury instruction that would have substituted the phrase “more likely than not” for the word “likely” in the statutory definition of a sexually violent predator (§ 6600, subd. (a)). The trial court denied the request. It instructed the jury in accordance with the statute, and defined a sexual predator as a person who “has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior’'’ if released. (§ 6600, former subd. (a), italics added.) The jury found defendant to be a sexually violent predator, and the trial court ordered him committed to a state mental hospital. The Court of Appeal affirmed.
We granted review to decide the meaning of the term “likely” as it appears in section 6600, subdivision (a), which defines a sexually violent predator.
II
We begin with a brief overview of the SVPA, which the Legislature enacted on October 11, 1995, and which became effective on January 1, 1996. (Stats. 1995, chs. 762 & 763, pp. 5912-5929.) The SVPA provides for “the involuntary civil commitment of certain offenders, following the completion of their prison terms, who are found to be [sexually violent predators] because they have previously been convicted of sexually violent crimes and currently suffer diagnosed mental disorders which make them dangerous in that they are likely to engage in sexually violent criminal behavior.” (Ghilotti, supra, 27 Cal.4th at p. 902.) The civil commitment is for two years, which may be renewed if there is no improvement in the defendant’s mental condition. (§ 6605, subd. (e); People v. Torres (2001) 25 Cal.4th 680, 683 [106 Cal.Rptr.2d 824, 22 P.3d 871].)
The process of determining whether a convicted sex offender can be involuntarily committed under the SVPA as a sexually violent predator “ ‘takes place in several stages, both administrative and judicial.’ ” (Ghilotti, supra, 27 Cal.4th at p. 903, quoting Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1145 [81 Cal.Rptr.2d 492, 969 P.2d 584] (Hubbart).) “ ‘Generally, the Department of Corrections screens inmates in its custody who are “serving a determinate prison sentence or whose parole has been revoked” at least six months before their scheduled date of release from prison. (§ 6601, subd. (a).) ... If officials find the inmate is likely to be [a sexually violent *985 predator], he is referred . . . for a “full evaluation” as to whether he meets the criteria in section 6600. (§ 6601, subd. (b).)’ ” (Ibid., italics added.)
Full evaluation, as described in section 6601, subdivision (d) is by “ ‘two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist, designated by the Director [of the State Department of Mental Health]. If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director shall forward a request for a [commitment] petition ... to the county . . . where the offender was convicted of the crime for which he is currently imprisoned.’” (Ghilotti, supra, 27 Cal.4th at p. 903, quoting statute.) If the county’s legal counsel agrees with the request and files a petition for commitment in superior court, that filing “ ‘triggers a new round of proceedings under the Act.’ ” (Id. at p. 904, quoting Hubbart, supra, 19 Cal.4th at p. 1146.)
First, there is a hearing before the superior court to decide “ ‘whether there is “probable cause” to believe the person named in the petition is likely to engage in sexually violent predatory criminal behavior upon release.’” (Ghilotti, supra, 27 Cal.4th at p. 904, quoting Hubbart, supra, 19 Cal.4th at p. 1146; see § 6602.) If the court decides such probable cause exists, the matter proceeds to trial, at which either party can demand that trial be by jury. (§ 6603, subds. (a) & (b).) Proof that the person qualifies as a sexually violent predator must be beyond a reasonable doubt (§ 6604), and a jury’s verdict must be unanimous (§ 6603, subd. (d)). Moreover, the trier of fact must determine not only that the defendant is “likely [to] engage in sexually violent behavior” (§ 6600, subd. (a)), but also whether that behavior would be “directed ‘toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization.’ (§ 6600, subd. (e).)” (People v. Hurtado (2002) 28 Cal.4th 1179, 1182 [124 Cal.Rptr.2d 186, 52 P.3d 116].)
Ill
We now turn to the issue on which we granted review in this case: The meaning of “likely [to] engage in sexually violent criminal behavior” as used in the SVPA’s section 6600, subdivision (a), describing the findings the trier of fact must make at trial to determine whether the convicted sex offender, after serving the requisite prison term, should be committed to a state mental hospital as a sexually violent predator.
While this case was pending before us, we granted review in Ghilotti, supra, 27 Cal.4th 888, which we decided on an expedited basis. There, we *986 resolved several issues pertaining to the SVPA, including the meaning of the word “likely” in section 6601, subdivision (d). That term is also at issue here, albeit in a different provision of the SVPA, namely section 6600, subdivision (a).
Section 6601, subdivision (d), at issue in Ghilotti, pertains to the evaluation of the convicted sex offender’s mental condition by two practicing psychiatrists or psychologists, the first phase of the SVPA’s involuntary commitment proceedings. (Ghilotti, supra, 27 Cal.4th at pp. 915-924.) The phrase we construed there was “likely to engage in acts of sexual violence without appropriate treatment and custody.” (§ 6601, subd. (d), italics added.)
We noted that several dictionaries and modem legal references had given the word “likely” a variety of meanings flexibly covering “a range of expectability from possible to probable.” (Ghilotti, supra, 27 Cal.4th at p. 916.) We further observed that as used in section 6601, subdivision (d), the term had to be “given a meaning consistent with the [SVPA’s] clear overall purpose,” which is “to protect the public from that limited group of persons who were previously convicted and imprisoned for violent sex offenses, and whose terms of incarceration have ended, but whose current mental disorders so impair their ability to control their violent sexual impulses that they do in fact present a high risk of reoffense if they are not treated in a confined setting.” (Ghilotti, supra, 27 Cal.4th at p. 921, original italics.)
Thus, we concluded in Ghilotti: “[T]he phrase ‘likely to engage in acts of sexual violence’ (italics added), as used in section 6601, subdivision (d), connotes much more than the mere possibility that the person will reoffend as a result of a predisposing mental disorder that seriously impairs volitional control. [But] the statute does not require a precise determination that the chance of reoffense is better than even. Instead, an evaluator applying this standard must conclude that the person is ‘likely’ to reoffend if, because of a current mental disorder which makes it difficult or impossible to restrain violent sexual behavior, the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit such crimes if free in the community.” (Ghilotti, supra, 27 Cal.4th at p. 922, original italics.)
At issue here is the final stage of the SVPA’s commitment process, a trial to determine whether the convicted sex offender, after serving the requisite prison term, is to be involuntarily committed as a sexually violent predator. At that trial, the prosecution must show beyond a reasonable doubt that it is “likely that [the person] will engage in sexually violent criminal behavior” if released. (§ 6600, subd. (a), italics added.)
*987 In the trial court, in the Court of Appeal, and in his opening brief in this court, defendant argued that a sexually violent predator, as defined in subdivision (a) of section 6600, is one whose likelihood of reoffending is “more likely than not.” In Ghilotti, supra, 27 Cal.4th 888, we rejected that standard in construing the meaning of “likely” in subdivision (d) of section 6601, which pertains to a mental health evaluation at the initial phase of the involuntary commitment process. After Ghilotti was filed, we asked the parties in this case for supplemental briefs regarding Ghilotti’s effect here. After considering those briefs, we conclude that the phrase “likely [to] engage in sexually violent behavior” in section 6600, subdivision (a), should be given the same meaning as the phrase “likely to engage in acts of sexual violence without appropriate treatment and custody” in section 6601, subdivision (d), the provision at issue in Ghilotti. In so concluding, we apply the general rule of statutory construction that “ ‘ “ ‘identical words used in different parts of the same act are intended to have the same meaning.’ ” ’ ” (Department of Revenue of Ore. v. ACF Industries, Inc. (1994) 510 U.S. 332, 342 [114 S.Ct. 843, 849, 127 L.Ed.2d 165]; see People v. Nguyen (1999) 21 Cal.4th 197, 205 [87 Cal.Rptr.2d 198, 980 P.2d 905].)
Our conclusion here is also consistent with our recent decision in Cooley v. Superior Court (2002) 29 Cal.4th 228 [127 Cal.Rptr.2d 177, 57 P.3d 654] (Cooley). At issue in Cooley was the SVPA’s section 6602, subdivision (a), which pertains to a hearing in superior court to determine whether there is probable cause “to believe the person named in the petition is likely to engage in sexually violent predatory criminal behavior upon release.” (Ibid., italics added.) Relying on Ghilotti, supra, 27 Cal.4th 888, Cooley construed that statutory phrase as “probable cause to believe that a potential [sexually violent predator] presents a serious and well-founded risk of committing sexually violent criminal acts that will be of a predatory nature.” (Cooley, supra, at p. 256.) As Cooley pointed out, nothing in the SVPA or its legislative history indicates that the Legislature intended “a different definition of ‘likely’ ” to apply at different stages of the SVPA commitment process. (Cooley, supra, at p. 255.)
Thus, in a trio of recent cases, we have given the same meaning to the word “likely” in three different provisions of the SVPA. In Ghilotti, supra, 27 Cal.4th 888, we construed section 6601, subdivision (d), pertaining to the first stage of the SVPA’s involuntary commitment process at which two mental health experts evaluate the person to be committed. In Cooley, supra, 29 Cal.4th 228, we construed section 6602, subdivision (a), pertaining to the second stage of the involuntary commitment process, involving a probable cause hearing. And in this case, we construe section 6600, subdivision (a), defining a sexually violent predator; that provision is relevant to the last *988 stage of the commitment process, a trial to determine whether the person is to be committed to a state mental institution as a sexually violent predator.
To summarize, under section 6600, subdivision (a), which is at issue here, a person is “likely [to] engage in sexually violent criminal behavior” if at trial the person is found to present a substantial danger, that is, a serious and well-founded risk, of committing such crimes if released from custody.[2]
IV
In his supplemental brief, defendant argues that at his 1999 SVPA trial, the trial court should, on its own initiative, have instructed the jury that the term “likely” as used in the SVPA’s statutory definition of sexually violent predator meant that defendant presented a substantial danger, that is, a serious and well-founded risk, of committing sexually violent predatory crimes if released from custody.
The rules governing a trial court’s obligation to give jury instructions without request by either party are well established. “Even in the absence of a request, a trial court must instruct on general principles of law that are . . . necessary to the jury’s understanding of the case.” (People v. Mayfield (1997) 14 Cal.4th 668, 773 [60 Cal.Rptr.2d 1, 928 P.2d 485]; People v. Prettyman (1996) 14 Cal.4th 248, 264 [58 Cal.Rptr.2d 827, 926 P.2d 1013].) That obligation comes into play when a statutory term “does not have a plain, unambiguous meaning,” has a “particular and restricted meaning” (People v. Mayfield, supra, at p. 773), or has a technical meaning peculiar to the law or an area of law (see People v. Howard (1988) 44 Cal.3d 375, 408 [243 Cal.Rptr. 842, 749 P.2d 279]).
As is clear from our recent decision in Ghilotti, supra, 27 Cal.4th 888, the meaning of the SVPA’s term “likely” is neither plain nor unambiguous. As we pointed out in Ghilotti, “modem legal references in particular suggest that ‘likely’ may be used flexibly to cover a range of expectability from possible to probable,” and include as its synonyms “ ‘conceivable,’ ” “ ‘potential,’ ” and “ ‘inclined.’ ” (Id. at pp. 916-917.) Not all of these dictionary definitions of “likely” are consistent with the particular and technical meaning the SVPA assigns that term: the person charged as a sexually violent predator poses a substantial danger, that is, a serious and well-founded risk, of committing a sexually violent predatory crime if *989 released from custody. Accordingly, in an SVPA trial the court must instruct the jury on this meaning even without a request by any party.
This case, however, was tried before our recent decision in Ghilotti, supra, 27 Cal.4th 888, clarified the unique meaning that the SVPA assigns to the term “likely.” The trial court here instructed the jury on the statutory definition of sexually violent predator, which, as relevant here, requires a finding that it is “likely [the person] will engage in sexually violent criminal behavior” if released. (§ 6600, subd. (a), italics added.) On the facts of this case, defendant cannot complain that the jury found him to be a sexually violent predator while concluding that his risk of reoffense if released from custody was less than “substantial” or “serious and well-founded,” the standard this court first articulated in Ghilotti. All of the evidence presented at defendant’s SVPA trial suggested that the risk of his reoffending was substantial as well as serious and well founded. Even defendant’s own expert, Dr. Donaldson, while disputing the prosecution’s evidence that defendant’s sexually predatory behavior resulted from mental illness, estimated defendant’s likelihood of committing another sexually violent offense at “better than 50 percent probability.” On this record, we can easily conclude, beyond a reasonable doubt (see People v. Hurtado, supra, 28 Cal.4th at p. 1194), that defendant suffered no possible prejudice from the challenged jury instruction.
Disposition
The judgment of the Court of Appeal is affirmed.
George, C. J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.
Appellant’s petition for a rehearing was denied April 9, 2003.

 The Diagnostic and Statistical Manual of the American Psychiatric Association (4th ed. 1994) (DSM IV) lists paraphilias as sexual dysfunctions and describes their general characteristics: “[R]ecurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one’s partner, or 3) children or other nonconsenting persons, that occur over a period of at least 6 months” which “cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.” (DSM IV, pp. 522-523.) “Paraphiliac imagery may be acted out with a nonconsenting partner in a way that may be injurious to the partner (as in Sexual Sadism or Pedophilia)” rendering “[t]he individual . . . subject to arrest and incarceration.” (DSM IV, p. 523.) The DSM IV lists nine categories of paraphilia, including the two diagnosed here: sexual sadism and paraphilia NOS, the residual category. (DSM IV, p. 523.)

 Evidence of the person’s amenability to voluntary treatment, if any is presented, is relevant to the ultimate determination whether the person is likely to engage in sexually violent predatory crimes if released from custody. (See Cooley, supra, 29 Cal.4th at p. 256; Ghilotti, supra, 27 Cal.4th at p. 927.)