10 Cal.Rptr.3d 44 (2004)
116 Cal.App.4th 373
In re HOWARD N., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Howard N., Defendant and Appellant.
No. F043006.
Court of Appeal, Fifth District.
February 19, 2004.
Review Granted May 12, 2004.
*45 Francia M. Welker, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Lloyd G. Carter and Kathleen A. McKenna, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
CORNELL, J.
Howard N.'s commitment to the California Youth Authority (CYA) for lewd and lascivious conduct with a child under the age of 14 (Pen.Code, § 288) was extended for an additional two years pursuant to Welfare and Institutions Code section 1800 et seq.[1]
Howard contends his commitment violated his constitutional right to due process and equal protection. (U.S. Const., 14th Amend.) He supports his argument with recent appellate decisions that have been rendered primarily as a result of legislation enacting statutory schemes to detain and treat offenders identified as sexually violent predators (SVP's). These decisions clarified the constitutional boundaries for civil commitment statutes. We conclude that section 1800 et seq. falls outside these boundaries and reverse the judgment committing Howard.

FACTUAL AND PROCEDURAL SUMMARY
The juvenile court committed Howard to the CYA after he molested a three-year-old child. His maximum period of confinement was set to expire in February 2003. Pursuant to section 1800, the Kern County District Attorney filed a petition to extend Howard's confinement, and a jury trial was held.
At the trial, the People presented evidence from three female correctional officers and two psychologists. The correctional officers testified they were on duty on different nights when they observed Howard near a window exposing himself to them while he masturbated. Howard's treating psychologist testified that Howard admitted that, when he did this, he was fantasizing about overpowering the guards and having sex with them. The second psychologist testified that, based on these incidents and his records and test results, *46 Howard presented a physical danger to the community if released.
The jury found Howard was physically dangerous to the community because of a mental or physical deficiency, disorder, or abnormality. The trial court ordered Howard confined for an additional two years.

DISCUSSION
In 1995 the Legislature enacted the Sexually Violent Predators Act (SVP Act), which is codified in section 6600 et seq. (Stats.1995, ch. 763, § 3.) Similar legislation has appeared throughout the country. Constitutional challenges to the SVP Act have reached both the California Supreme Court and the United States Supreme Court. These decisions have established constitutional limitations on civil commitment statutes, such as section 1800 et seq.
We are presented here with due process and equal protection challenges to section 1800 as a result of the principles pronounced in the SVP Act cases. Our analysis begins with a review of the relevant civil commitment statutes.
The SVP Act provides for the involuntary civil commitment of certain offenders. An offender is eligible for commitment as an SVP if he or she has been convicted of sexually violent offenses (as defined in section 6600, subd. (a)(2)) against two or more victims, and he or she has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent behavior. (Id., subd. (a)(1).) A diagnosed mental disorder is defined as a "congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (Id., subd. (c).)
The Mentally Disordered Offender Act (MDO Act) (Pen.Code, § 2960 et seq.) is a civil commitment statute that also applies to certain offenders about to be released on parole. An offender is eligible for commitment under the MDO Act if all of the following are met: (1) he or she has a severe mental disorder that is not in remission or cannot be kept in remission without treatment (Pen.Code, § 2962, subd. (a)); (2) the disorder must have been "one of the causes of or was an aggravating factor in the commission of a crime for which the prisoner was sentenced to prison" (id., subd. (b)); (3) he or she has been in treatment for the severe mental disorder for 90 days or more within the year prior to the release date (id., subd. (c)); (4) before his or her parole or release, the treating physician and other specified medical authorities certify that each of the noted conditions exist, and because of the disorder the offender "represents a substantial danger of physical harm to others" (id., subd. (d)(1)); and (5) the crime for which the prisoner was sentenced to prison was punished by a determinate sentence under Penal Code section 1170 (Pen.Code, § 2962, subd. (e)(1)) and is specifically listed in the MDO Act (id., subd. (e)(2)(A)-(Q)).
The Lanterman-Petris-Short Act (LPS Act) (§ 5000 et seq.) "is a comprehensive scheme designed to address a variety of circumstances in which a member of the general population may need to be evaluated or treated for different lengths of time." (Cooley v. Superior Court (2002) 29 Cal.4th 228, 253, 127 Cal.Rptr.2d 177, 57 P.3d 654.) A person who, "as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled," may be taken into custody and placed in a designated facility for varying periods, depending on the circumstances. (§ 5150.)
*47 Section 1800 et seq. provides for the civil commitment of individuals under the control of the CYA. The scheme provides that if the Youthful Offender Parole Board (YOPB) determines that discharge of a person from the CYA "would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality," the YOPB may request that a petition be filed seeking continued commitment of the person. (Ibid.)
Sections 1800, 1801 and 1802 were added by statute in 1963. (Stats.1963, ch. 1693, § 4, pp. 3323-3324.) Section 1801.5 was added by statute in 1971. (Stats.1971, ch. 1337, § 1, p. 2641.) These statutes have been amended infrequently.[2] Some, if not most, of the amendments were in response to constitutional challenges to other civil commitment statutes.[3] Unfortunately, the most recent amendments have not kept pace with current constitutional pronouncements on civil commitment statutes.
As stated above, enactment of the SVP Act generated considerable litigation. Kansas's sexually violent predator act (the Kansas Act), similar to the SVP Act (People v. Williams (2003) 31 Cal.4th 757, 764, 3 Cal.Rptr.3d 684, 74 P.3d 779 (Williams)), was challenged on substantive due process grounds in Kansas v. Hendricks (1997) 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (Hendricks). Hendricks was a pedophile who admittedly had trouble controlling his urge to molest children when he became "stressed out." (Id. at p. 355, 117 S.Ct. 2072.) The Kansas Act defined a sexually violent predator as "`any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence.' [Citation.] [¶] A `mental abnormality' was defined, in turn, as a `congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.' [Citation.]" (Id. at p. 352, 117 S.Ct. 2072.)
The Kansas Supreme Court invalidated the Kansas Act, concluding it violated Hendricks's right to due process because the statute's definition of "mental abnormality" did not satisfy the constitutional requirement that civil commitment statutes be limited to those individuals who have a "mental illness." (Hendricks, supra, 521 U.S. at p. 356, 117 S.Ct. 2072.)
The United States Supreme Court acknowledged that "States have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety. [Citations.] We have consistently upheld such involuntary commitment statutes, provided the confinement takes place pursuant to proper procedures and evidentiary standards. [Citations.] [¶] ... [¶] A finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment. We have sustained civil commitment statutes when *48 they have coupled proof of dangerousness with the proof of some additional factor, such as a `mental illness' or `mental abnormality.' [Citations.] These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control." (Hendricks, supra, 521 U.S. at pp. 357-358, 117 S.Ct. 2072.) The Supreme Court concluded that the Kansas Act satisfied the above requirements and did not violate Hendricks's right to equal protection. (Id. at p. 359, 117 S.Ct. 2072.) The Supreme Court also held the Kansas Act was a civil commitment statute that did not implicate either ex post facto or double jeopardy principles. (Id. at pp. 369-371, 117 S.Ct. 2072.)
The Supreme Court revisited the Kansas Act in Kansas v. Crane (2002) 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (Crane). The Kansas Supreme Court vacated Crane's commitment as a sexually violent predator, concluding that Hendricks required the State to prove that Crane could not control his dangerous behavior and the State had failed to meet this burden. The United States Supreme Court held that Hendricks did not impose such a requirement. (Crane, at p. 411, 122 S.Ct. 867.)
"We do not agree with the State, however, insofar as it seeks to claim that the Constitution permits commitment of the type of dangerous sexual offender considered in Hendricks without any lack-of-control determination. [Citation.] Hendricks underscored the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment `from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings.' [Citation.] That distinction is necessary lest `civil commitment' become a `mechanism for retribution or general deterrence'  functions properly those of criminal law, not civil commitment. [Citations.] The presence of what the `psychiatric profession itself classifie [d] ... as a serious mental disorder' helped to make that distinction in Hendricks. And a critical distinguishing feature of that `serious ... disorder' there consisted of a special and serious lack of ability to control behavior. [¶] In recognizing that fact, we did not give to the phrase `lack of control' a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, `inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case. [Citations.]" (Crane, supra, 534 U.S. at pp. 412-413, 122 S.Ct. 867 original and added italics.)
The California Supreme Court has addressed the SVP Act on numerous occasions. In Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584, the Supreme Court cited Hendricks extensively in rejecting due process, equal protection and ex post facto challenges to the SVP Act. In rejecting the defendant's claim that the SVP Act deprived him of due process because it did not expressly incorporate a "mental illness" requirement, the Supreme Court stated, "Much like the Kansas law at issue in Hendricks, our statute defines an SVP as a person who has committed sexually *49 violent crimes and who currently suffers from `a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' (§ 6600, subd. (a).) Through this language, the SVPA plainly requires a finding of dangerousness. The statute then `links that finding' to a currently diagnosed mental disorder characterized by the inability to control dangerous sexual behavior. [Citation.] This formula permissibly circumscribes the class of persons eligible for commitment under the Act." (Hubbart, at p. 1158, 81 Cal.Rptr.2d 492, 969 P.2d 584, fn. omitted.) In rejecting another argument, the Supreme Court reaffirmed that "due process requires an inability to control dangerous conduct...." (Ibid.)
The Supreme Court revisited the SVP Act in People v. Superior Court (Ghilotti) (2002) 27 Cal.4th 888, 119 Cal.Rptr.2d 1, 44 P.3d 949. The defendant was confined under the SVP Act when the Director of the State Department of Mental Health (the Director) designated two psychologists formally to examine him. The psychologists both concluded the defendant no longer met the statutory conditions for confinement. The Director disagreed and a petition was filed to continue the commitment under the SVP Act.
The Supreme Court rejected the Attorney General's suggestion that the SVP Act permitted the filing of a petition, even in the absence of the recommendation of two psychologists. (People v. Superior Court (Ghilotti), supra, 27 Cal.4th at p. 894, 119 Cal.Rptr.2d 1, 44 P.3d 949.) The Supreme Court held, however, that the Director retained the ability to challenge the formal evaluations if he or she concluded that the evaluations did not comply with the statutory framework. (Id. at pp. 912-913, 119 Cal.Rptr.2d 1, 44 P.3d 949.)
To provide guidance in performing these evaluations, the Supreme Court discussed the statutory standard for determining whether a person diagnosed with a mental disorder is likely to engage in future acts of violence. (People v. Superior Court (Ghilotti), supra, 27 Cal.4th at p. 915, 119 Cal.Rptr.2d 1, 44 P.3d 949.) The Supreme Court concluded that the phrase "likely to engage in acts of sexual violence" (§ 6601, subd. (d)) "requires a determination that, as the result of a current mental disorder which predisposes the person to commit violent sex offenses, he or she presents a substantial danger  that is, a serious and well-founded risk  of reoffending in this way if free." (Ghilotti, at p. 916, 119 Cal.Rptr.2d 1, 44 P.3d 949.) "The SVPA thus consistently emphasizes the themes common to valid civil commitment statutes, i.e., a current mental condition or disorder that makes it difficult or impossible to control volitional behavior and predisposes the person to inflict harm on himself or others, thus producing dangerousness measured by a high risk or threat of further injurious acts if the person is not confined. [Citation.]" (Id. at p. 920, 119 Cal.Rptr.2d 1, 44 P.3d 949.)
This conclusion was reemphasized in the Supreme Court's summary: "We therefore conclude that the phrase `likely to engage in acts of sexual violence' (italics added), as used in section 6601, subdivision (d), connotes much more that the mere possibility that the person will reoffend as a result of a predisposing mental disorder that seriously impairs volitional control. On the other hand, the statute does not require a precise determination that the chance of reoffense is better than even. Instead, an evaluator applying this standard must conclude that the person is `likely' to reoffend if, because of a current mental disorder which makes it difficult or impossible to restrain violent sexual behavior, the person *50 presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit such crimes if free in the community." (People v. Superior Court (Ghilotti), supra, 27 Cal.4th at p. 922, 119 Cal.Rptr.2d 1, 44 P.3d 949.)
Finally, as relevant here, in rejecting the defendant's claim that the Constitution required a higher level of certainty before it could proceed under the SVP Act, the Supreme Court stated, "In our view, the state has a compelling protective interest in the confinement and treatment of persons who have already been convicted of violent sex offenses, and who, as the result of current mental disorders that make it difficult or impossible to control their violent sexual impulses, represent a substantial danger of committing similar new crimes...." (People v. Superior Court (Ghilotti), supra, 27 Cal.4th at p. 924, 119 Cal.Rptr.2d 1, 44 P.3d 949.) Subsequent decisions have imposed this standard both at the preliminary hearing (Cooley v. Superior Court, supra, 29 Cal.4th at p. 255, 127 Cal.Rptr.2d 177, 57 P.3d 654) and at trial (People v. Roberge (2003) 29 Cal.4th 979, 988, 129 Cal.Rptr.2d 861, 62 P.3d 97).
The Supreme Court again addressed the SVP Act in Williams, supra, 31 Cal.4th 757, 3 Cal.Rptr.3d 684, 74 P.3d 779, which was decided after Crane. The issue presented was whether the SVP Act adequately encompassed the constitutional requirement that before a person could be committed civilly there must be proof that the potential committee has "serious difficulty in controlling [his or her] behavior." (Crane, supra, 534 U.S. at p. 413, 122 S.Ct. 867.) The Supreme Court concluded the statute "inherently encompasses and conveys to a fact finder the requirement of a mental disorder that causes serious difficulty in controlling one's criminal sexual behavior. The SVPA's plain words thus suffice `to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.' [Citation.]" (Williams, at pp. 759-760, 3 Cal.Rptr.3d 684, 74 P.3d 779.)
"Thus, in essence, Kansas v. Crane, supra, 534 U.S. 407 [122 S.Ct. 867, 151 L.Ed.2d 856], (1) confirmed the principle of Hendricks, supra, 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501], that a constitutional civil commitment scheme must link future dangerousness to a mental abnormality that impairs behavioral control, while (2) making clear that the impairment need only be serious, not absolute.... [¶].... Though the high court rejected the State of Kansas's argument that no impairment-of-control `determination' was required [citation], this language, read in context, appears intended only to verify that a constitutional civil confinement scheme cannot dispense with impaired behavioral control as a basis for commitment. [¶] As we made clear in Hubbart, supra, 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584], California's SVPA, like the Kansas statute at issue in Hendricks, supra, 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501], and Kansas v. Crane, supra, 534 U.S. 407 [122 S.Ct. 867, 151 L.Ed.2d 856], does not dispense with that requirement. On the contrary, California's statute inherently embraces and conveys the need for a dangerous mental condition characterized by impairment of behavioral control. As we have seen, the SVPA accomplishes this purpose by defining a sexually violent predator to include the requirement of a diagnosed mental disorder (§ 6600, subd. (a)(1)) affecting the emotional or volitional capacity (id., subd.(c)), which predisposes one to commit criminal sexual acts so as to render the person a *51 menace to the health and safety of others (ibid.), such that the person is `likely [to] engage in sexually violent criminal behavior' (id., subd. (a)(1)). [Citation.]" (Williams, supra, 31 Cal.4th at pp. 773-774, 3 Cal.Rptr.3d 684, 74 P.3d 779.)
The Supreme Court concluded, "For all the reasons indicated, we conclude that a commitment rendered under the plain language of the SVPA necessarily encompasses a determination of serious difficulty in controlling one's criminal sexual violence, as required by Crane, supra, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856. Accordingly, separate instructions or findings on that issue are not constitutionally required, and no error arose from the court's failure to give such instructions in defendant's trial." (Williams, supra, 31 Cal.4th at p. 777, 3 Cal.Rptr.3d 684, 74 P.3d 779, fn. omitted.)
Although these decisions specifically address either the SVP Act or the Kansas Act, it is clear that these constitutional principles apply equally to all civil commitment schemes, including section 1800 et seq. These principles establish that the Constitution permits civil commitment only if it is proven that the potential committee has a mental illness or abnormality that makes him or her dangerous because the mental illness or abnormality causes him or her to have serious difficulty controlling his or her behavior resulting in a serious and well-founded risk of reoffense.
We conclude that section 1800 et seq. does not meet these constitutional requirements. Section 1800 permits the filing of a petition for continued commitment when the YOPB concludes it "would be physically dangerous to the public [to release the potential committee] because of the person's mental or physical deficiency, disorder, or abnormality." (Ibid.) The only issue decided by the trial court or the jury was whether Howard was "physically dangerous to the public because of his or her mental or physical deficiency, disorder, or abnormality." (§ 1801.5.) This question adequately conveys to the jury that the potential committee must have a mental deficiency, disorder, or abnormality that renders the person dangerous. It does not convey adequately to the jury that it also must determine whether the mental illness or abnormality causes the potential committee to have serious difficulty controlling his or her behavior and whether this loss of control results in a serious and well-founded risk of reoffense.
This deficiency not only violates the due process clause of the Constitution, but it also renders the jury instructions defective. The jury in this case was instructed only in the statutory language. The special verdict submitted to the jury contained only the question set forth in the statute. Unlike Williams, there were no instructions defining any of the terms that conveyed the above principles.
Williams also teaches that jury instructions cannot be used to overcome the deficiencies in the statute. "In our view, a judicially imposed requirement of special instructions augmenting the clear language of the SVPA would contravene the premise of both Hendricks, supra, 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501], and Kansas v. Crane, supra, 534 U.S. 407 [122 S.Ct. 867, 151 L.Ed.2d 856], that, in this nuanced area, the Legislature is the primary arbiter of how the necessary mental-disorder component of its civil commitment scheme shall be defined and described. [Citations.]" (Williams, supra, 31 Cal.4th at p. 774, 3 Cal.Rptr.3d 684, 74 P.3d 779.)
Nor can we conclude that the above errors were harmless beyond a reasonable doubt. (People v. Hurtado (2002) 28 Cal.4th 1179, 1194, 124 Cal.Rptr.2d 186, 52 *52 P.3d 116; Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.) The only expert at trial testified that Howard's diagnosis was paraphilia not otherwise specified and, because of this untreated sexual disorder, he was physically dangerous to the public. While this testimony complies with the statutory requirements, it does not address the issues ignored by the statute, but required by the Constitution. The jury thus was not provided with the necessary information to impose a valid civil commitment.
Howard also argues that his right to equal protection was violated. He points out that he was committed because of his conviction of a sex offense and he had an untreated sexual disorder similar to an individual committed under the SVP Act. Yet, section 1800 et seq. does not have many of the protections or requirements of the SVP Act. We need not address Howard's equal protection argument because our conclusion that section 1800 et seq. violated his right to due process renders the issue moot.

DISPOSITION
The judgment is reversed.
WE CONCUR: BUCKLEY, Acting P.J., and WISEMAN, J.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.
[2] Section 1800 was last amended in 1984 (Stats.1984, ch. 546, § 1, p. 2175), section 1801 in 1999 (Stats.1999, ch. 83, § 199), section 1801.5 in 1998 (Stats.1998, ch. 267, § 2), and section 1802 in 1980 (Stats.1980, ch. 1117, § 25, p. 3607).
[3] For example, the right to a jury trial was added after the Supreme Court held in In re Gary W. (1971) 5 Cal.3d 296, 307-308, 96 Cal.Rptr. 1, 486 P.2d 1201 that a the defendant's right to due process and equal protection was violated by failing to require a jury trial.