Filed 7/18/16  P. v. Tumilty CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PHILLIP EUGENE TUMILTY,<br><br>    Defendant and Appellant. | F070117<br><br>(Stanislaus Super. Ct. No. 1450183)<br><br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Julia Freis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Gomes, Acting P.J., Kane, J. and Smith, J.

Appellant Phillip Eugene Tumilty pled no contest to infliction of corporal injury on a spouse (count I, Pen. Code, § 273.5, subd. (a))[1] and child abduction (count II, § 278.5, subd. (a)) and was granted probation. After he violated his probation, the court sentenced him to prison for a term of three years eight months.

On appeal, Tumilty contends the court prejudicially erred by its failure to order and consider a probation report before sentencing him after he violated his probation. We affirm.

## **FACTS**

On September 28, 2012, in Empire, California, Tumilty committed a battery on his wife, T.T., which caused bruising. Additionally, even though Tumilty did not have visitation that day, he picked up his two minor children from school and took them out of Stanislaus County.

On October 2, 2012, the district attorney filed a complaint charging Tumilty with infliction of corporal injury on a spouse (count I) and two counts of child abduction (counts II & III). The complaint also alleged Tumilty had a prior conviction within the meaning of the three strikes law (§ 667, subds. (b)-(i)).

On December 18, 2012, after count II was amended to name both children as victims, Tumilty pled no contest to counts I and II in exchange for the dismissal of the remaining count and the three strikes allegation.[2] Tumilty also waived a probation report and time for sentencing. The court then suspended imposition of sentence and placed Tumilty on probation for three years on the condition he serve 360 days in local custody.

---

[1]     All further statutory references are to the Penal Code.

[2]     Tumilty entered his plea prior to a preliminary hearing in this matter. He also pled no contest to a misdemeanor, violating a court order (§ 273.6, subd. (a)) in an unrelated case in exchange for the dismissal of the remaining counts and allegations in that case and a stipulated term of 90 days in local custody, which would run concurrent to the sentence imposed in the instant case.

Tumilty's conditions of probation prohibited him from contacting T.T. or coming within 100 yards of her.

On March 12, 2013, after being released from custody, Tumilty forced his way into T.T.'s home and assaulted her. Tumilty was arrested that day for two misdemeanors, battery on a spouse, and disobeying a court order.

On March 14, 2013, Tumilty was released from custody.

On March 15, 2013, Tumilty broke into T.T.'s home while she was gone and used the home phone to leave a message on T.T.'s cellphone.

On March 17, 2013, Tumilty left a voice message on T.T.'s home phone.

On March 18, 2013, T.T. told probation officers she had not returned to her home since March 15, 2013, because she was afraid Tumilty would return and she feared for her life. At her request, the officers searched her home to make sure Tumilty was not hiding there.

On March 19, 2013, the probation department filed an order to show cause why Tumilty should not be found in violation of probation. The order alleged Tumilty violated the condition of his probation prohibiting him from contacting T.T. and it ordered Tumilty to appear at a hearing on March 20, 2013. After Tumilty failed to appear at the hearing on that date, the court revoked his probation and issued an order for his arrest.

On July 7, 2014, Tumilty appeared in court, in custody, and the court set the matter for a contested probation violation hearing on July 24, 2014.

On July 9, 2014, the probation department filed an order to show cause alleging Tumilty violated the condition of probation prohibiting him from contacting T.T. and recommending that he serve an additional 240 days in local custody.

On July 24, 2014, the order to show cause was amended to allege that Tumilty failed to report to the probation officer and to participate in counseling as ordered by the court. After a break in the proceedings, Tumilty admitted violating his probation as

3.

alleged in the amended order to show cause. The court then continued the matter for sentencing to the following day to allow the probation department to procure T.T.'s attendance. It did not, however, order the department to prepare a probation report.

On July 25, 2014, at Tumilty's sentencing hearing the prosecutor argued that the court should sentence Tumilty to an aggregate term of three years eight months and he informed the court that victim T.T. agreed to that term being imposed. Defense counsel submitted the matter without making any arguments. The court then found Tumilty unsuitable for a continued grant of probation and sentenced him to an aggregate prison term of three years eight months, the middle term of three years on count I and a consecutive eight-month term (one-third the middle term of two years) on count II.

Defense counsel did not object to the failure to prepare a probation report or to the sentence imposed.

## DISCUSSION

### *The Court Erred by its Failure to Order a Probation Report*

Tumilty contends the court erred by its failure to order the probation department to prepare a probation report for his July 25, 2014, sentencing hearing. He contends the error violated his rights under section 1203, California Rules of Court, rule 4.411,[3] and the Fourteenth Amendment and requires reversal without a harmless-error analysis because it deprived him of a fundamental right. Alternatively, Tumilty contends that under the *Watson*[4] standard of prejudice, the following circumstances establish he was prejudiced by the trial court's failure to order a probation report before sentencing him: (1) the court failed to recognize his plea at an early stage as a mitigating circumstance (rule 4.423(b)(3)); (2) the court failed to properly exercise its discretion; and (3) in imposing the middle term on count I, the trial court considered his conduct while on

---

[3] All further references to rules are to the California Rules of Court.

[4] *People v. Watson* (1956) 46 Cal.2d 818, 834-836 (*Watson*).

4.

probation. Respondent concedes the court erred by not ordering a probation report but maintains that the *Watson* harmless-error standard applies to the error and that under that standard, Tumilty failed to show he was prejudiced. We agree with respondent.

Section 1203, subdivision (b)(1), requires the trial court to order a probation report "before judgment is pronounced" for persons "convicted of a felony" who are "eligible for probation." (§ 1203, subd. (b)(1); *People v. Dobbins* (2005) 127 Cal.App.4th 176, 180 (*Dobbins* ).) Rule 4.411(c) provides: "The court shall order a supplemental probation officer's report in preparation for sentencing proceedings that occur a significant period of time after the original report was prepared." The preparation of a report may be waived only by a written stipulation of the prosecutor and defense counsel that is filed with the court or an oral stipulation in open court that is made and entered into the minutes. (§ 1203, subd. (b)(4).)

Although Tumilty was eligible for probation, a probation report was not prepared after Tumilty entered his plea in this matter because he waived the preparation of a report. Tumilty, however, did not waive the preparation of a probation report for his July 25, 2014, sentencing hearing. Thus, the court erred by not ordering and considering a probation report before sentencing Tumilty to prison.

### The Court's Error is not Reversible Per Se

In criminal cases, if an error is one of state law that does not implicate constitutional rights, the standard of review for assessing prejudice is the *Watson* test, i.e., whether it is reasonably probable a result more favorable to the appealing party would have been reached in absence of the error. (*People v. Vasquez* (2006) 39 Cal.4th 47, 66 (*Vasquez*).) A reasonable probability is one sufficient to undermine confidence in the outcome of the proceedings. (*Strickland v. Washington* (1984) 466 U.S. 668, 694; *In re Neely* (1993) 6 Cal.4th 901, 909.) It is the burden of the appellant to demonstrate that there is a reasonable probability of a more favorable result. (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1190.) At the same time, the California Supreme Court has "recognized

5.

that certain fundamental errors in procedure, sometimes referred to as ' "structural," '
'are not susceptible to the "ordinary" or "generally applicable" harmless-error analysis-
i.e., the *Watson* "reasonably probable" standard—and may require reversal of the
judgment notwithstanding the strength of the evidence contained in the record in a
particular case.' " (*Vasquez, supra,* 39 Cal.4th at p. 66.)

"A structural defect is the type of error 'affecting the framework within which the
trial proceeds, rather than simply an error in the trial process itself,' one that " 'transcends
the criminal process" ' and 'def[ies] analysis by "harmless-error" standards.' [Citation.]
Examples of structural defects include total deprivation of the right to counsel at trial
[citation]; trial before a judge who is not impartial [citation]; and the giving of a
constitutionally defective instruction on reasonable doubt [citation].  Trial errors, by
contrast, are errors that 'occurred during the presentation of the case to the jury, and
which may therefore be quantitatively assessed in the context of other evidence
presented' in order to determine whether the error was harmless.  [Citation.]  There is a
strong presumption any error falls within the latter category, and it is the rare case in
which a constitutional violation will not be subject to harmless error analysis." (*People v.
Marshall* (1996) 13 Cal.4th 799, 851.)

In *Dobbins*, *supra*, 127 Cal.App.4th 176, the court rejected the defendant's
suggestion that the failure to order a supplemental probation report required reversal per
se stating:  "Because the alleged error implicates only California statutory law, review is
governed by the *Watson* harmless error standard.  (See *People v. Watson*[, *supra*,] 46
Cal.2d 818, 834-836; see also *People v. Mower* (2002) 28 Cal.4th 457, 484.)  That is, we
shall not reverse unless there is a reasonable probability of a result more favorable to
defendant if not for the error." (*Id.* at p. 182.)

We agree with *Dobbins* that an error in failing to order a probation report does not
require automatic reversal and is subject to the *Watson* standard of prejudice because it
does not involve a structural error and it implicates only California statutory law.

(*Engle v. Isaac* (1982) 456 U.S. 107, 121, fn. 21 [" 'mere error of state law' is not a denial of due process" otherwise " 'every erroneous decision by a state court would [go to the United States Supreme Court] as a federal constitutional question' "].)

In support of his contention that the court's error is reversible per se, Tumilty cites *People v. Rojas* (1962) 57 Cal.2d 676 (*Rojas*), *People v. Keller* (1966) 245 Cal.App.2d 711 (*Keller*), and *People v. Causey* (1964) 230 Cal.App.2d 576 (*Causey*). In *Rojas*, the defendants were convicted of receiving stolen property. On appeal, their convictions were reduced to attempted receiving stolen property. On remand for resentencing, the trial court refused requests by defense counsel and the prosecution to refer the matter to the probation officer for the preparation of a new probation report. Instead, the court imposed the same sentences stating that it did not see any reason for modifying them. (*Rojas, supra,* 57 Cal.2d at p. 679.)

The *Rojas* court found that the trial court denied the defendants a substantial right by its failure to comply with the mandate of section 1203 and remanded the matter for resentencing after the trial court obtained and considered a probation report. (*Rojas, supra,* 57 Cal.2d at pp. 681-683.) The court, however, did not discuss what standard of prejudice it used in determining that remand was appropriate.

In *Keller* and *Causey,* the judgements were also reversed because in each case the trial court violated section 1203 by its failure to order a probation report when it considered the defendants' application for probation. In each case the matter was also remanded for resentencing, without a discussion of prejudice resulting from the trial court's failure to comply with section 1203. (*Keller, supra,* 245 Cal.App.2d at pp. 715-718; *Causey, supra,* 230 Cal.App.2d at pp. 578-580.)

None of these three cases is controlling, however, because: (1) they were each decided on statutory grounds; (2) none of them held that the failure to obtain a current probation report is structural error; and (3) their holdings are inconsistent with more recent pronouncements by our Supreme Court and the United States Supreme Court that

7.

the *Watson* test is the appropriate test of prejudice for errors involving state law. (See e.g., *Vasquez*, *supra*, 39 Cal.4th at p. 66.)

Tumilty raises other challenges to the use of the *Watson* standard of prejudice to analyze the court's error here. We summarily reject these challenges, however, because none of the cases he relies on support a conclusion that this type of error is a "structural defect" that defies "harmless-error analysis." (*People v. Marshall*, *supra*, 13 Cal.4th 799, 851.)

***Tumilty has not Shown Prejudice Under the Watson Standard***

Alternatively, Tumilty contends the court's error here was not harmless under the *Watson* standard of prejudice because the court: (1) failed to recognize his plea at an early stage, i.e., prior to the preliminary hearing, as a mitigating circumstance (rule 4.423(b)(3)); !(AOB: 22-23)! (2) misunderstood its sentencing discretion; !(AOB: 23-27)! and (3) considered his conduct on probation in imposing the middle term. !(AOB: 22.)! According to Tumilty, he was prejudiced by the failure to obtain a probation report because these errors "might have been prevented by a sentencing report and that would have benefited [him]." We disagree.

Section 1170, subdivision (b) provides, in pertinent part:

> "(b) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court …. In determining the appropriate term, the court may consider the record in the case, the probation officer's report, ... and any further evidence introduced at the sentencing hearing. The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected…."

> "A trial court's decision to impose a particular sentence is reviewed for abuse of discretion and will not be disturbed on appeal 'unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' [Citation.] 'In reviewing for abuse of discretion, we are guided by two fundamental precepts. … " '[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or

8.

arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " ' " (*People v. Jones* (2009) 178 Cal.App.4th 853, 860-861.)

When released from custody on March 12, 2013, after serving his probationary term, Tumilty disobeyed the court's order to keep away from T.T. when he broke into her home and assaulted her. He was also arrested that day for battery on a spouse and disobeying a court order. After again being released from custody, Tumilty again disobeyed a court order when he broke into T.T.'s home and used the home phone to leave a message on her cell phone and when he left a voicemail on her home phone. Tumilty failed to appear at the March 20, 2013, hearing on an order to show cause and he did not appear in court until July 7, 2014, after being arrested on a warrant for failing to appear at the earlier hearing. Tumilty also violated his probation by failing to contact the probation officer and by failing to complete court-ordered counseling. Based on his atrocious conduct during probation, it is unlikely a probation report would have contained any information that might have caused the court to consider reinstating Tumilty's probation. Moreover, the court did not find any mitigating circumstances and Tumilty has not cited any circumstances that arguably might have convinced the court to impose the mitigated term.

Tumilty cites his early plea as a mitigating circumstance the court failed to consider. However, a defendant's early admission of guilt is not a mitigating circumstance when it occurs pursuant to a plea bargain through which the defendant receives a substantial benefit. (*People v. Burg* (1981) 120 Cal.App.3d 304, 306-307.) Although Tumilty entered his plea prior to the preliminary hearing, in exchange for his plea the prosecutor dismissed one count of child abduction and a prior strike conviction that could have doubled his sentence. Thus, his early plea was not a mitigating circumstance.

During sentencing the court stated, "And for Count I, battery on a spouse, weighing any mitigating and aggravating factors, don't really see any mitigating factors here at all. *And so the choice that the Court has, it's really the middle term*." (Italics added.) !(RT: 33.)! In imposing a consecutive term on the second count the court stated, "And they are separate victims, really, in Count I and Count II. And so the Court *really should run those two counts consecutive* since they are separate victims." (Italics added.) !(RT: 34.)!

Tumilty contends the first two statements quoted above indicate the court used the middle term as the "default sentence" and "weighed the relative balance of the factors in aggravation and mitigation to reach a sentence," which he claims was improper under the current determinate sentencing law. (See § 1170, subd. (b).) !(AOB: 23-25.)! He contends the second two quoted sentences shows the court erroneously believed it did not have discretion to impose a concurrent term on count II. !(AOB:25-27.)! Thus, according to Tumilty, he was prejudiced by the absence of a probation report because the court misunderstood its discretion and a report would have "alerted" the court to the scope of its discretion in each instance noted above. !(AOB: 24-27.)! We disagree.

Section 1170 requires the court to state reasons for its sentencing choice even if it imposes the middle term. (§ 1170, subd. (b); *People v. Sandoval* (2007) 41 Cal.4th 825, 847.) The court, here, stated a reason for imposing the middle term, i.e., the absence of mitigating circumstances.[5] Moreover, Tumilty has not cited any authority that prohibits a court from weighing the aggravating factors against the mitigating factors in deciding what reason to cite as the basis for its sentencing choice.

---

[5] Even if this were not a valid reason for imposing the middle term, Tumilty forfeited this issue by his failure to object in the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 353 [the forfeiture "doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"].)

Additionally, the court's comments in sentencing Tumilty to a consecutive term on count II do not indicate the court believed it lacked discretion to impose a concurrent term on that count. Rather, they reflect the court's reasoned assessment in exercising its discretion that a consecutive term should be imposed on count II because it involved different victims, which was a proper reason for imposing consecutive terms. (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1324-1325.) Thus, we reject Tumilty's contention that the four statements quoted above indicate the court misunderstood its sentencing discretion and that a probation report would have resulted in a more favorable result for him by alerting the court to the proper extent of its discretion. !(AOB: 27.)!

After Tumilty admitted violating probation, the court stated, in pertinent part,

> "We'll put this over, Mr. Tumilty. We'll have a hearing tomorrow. We'll see you back tomorrow on the hearing and your violation of probation. We'll get the probation officer here, then, and see if you can get the victim here, because, first of all, before I sentence, the victim needs to be contacted in this case. Might wind up with the aggravated term. See you back tomorrow .…" !(RT: 28.)!

Tumilty contends these comments indicate the court wanted T.T. present so she could testify regarding the facts underlying his violations of probation. From this he concludes the court improperly considered his conduct while on probation in determining his sentence. (See rule 4.435(b)(1) ["the length of sentence must be based on circumstances existing at the time probation was granted, and subsequent events may not be considered in selecting the base term"].) !(AOB: 28)! Not so.

Article 1, section 28 of the California Constitution provides in part: "(a) The People of the State of California find and declare all of the following: [¶] ... [¶] (6) Victims of crime are entitled to finality in their criminal cases .… [¶] ... [¶] (b) In order to preserve and protect a victim's rights to justice and due process, *a victim shall be entitled to the following rights*: [¶] ... [¶] (8) *To be heard, upon request, at any proceeding, including any ... sentencing .…"* (Italics added.) There is nothing in the

11.

quoted statements that suggest the court wanted T.T. present the following day to testify regarding the facts underlying Tumilty's probation violations. Further, T.T. was present the following day at Tumilty's sentencing hearing and did not testify. Instead, as was her right, she advised the court through the prosecutor that she would be satisfied if Tumilty received a prison sentence of three years eight months. Thus, there is no merit to Tumilty's contention that the court considered his conduct during probation in sentencing him.[6] It follows that Tumilty has not met his burden of showing he would have received a more favorable result in the absence of the court's error in failing to order a probation report.

## DISPOSITION

The judgment is affirmed.

---

[6] Tumilty also contends he was prejudiced by the failure to order a probation report because a report might have recommended a term less than three years eight months and this might have swayed the court to impose a lesser term. !(AOB: 29.)! This assertion is pure speculation because the court is not bound by the recommendations of the probation department. (*People v. Johnson* (1951) 106 Cal.App.2d 815, 816.) In any event, it is unlikely the court would have imposed a lesser term even if a probation report had been prepared because the court did not find any mitigating circumstances and the victim agreed to the sentence imposed.