Filed 9/23/16  P. v. McIntire CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JASON MICHAEL MCINTIRE,<br><br>    Defendant and Appellant. | F070255<br><br>(Super. Ct. No. CRF42141)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Frank J. Torrano, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Paul A. Bernardino, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

A jury convicted appellant Jason Michael McIntire of buying or receiving a stolen vehicle he knew to be stolen, a felony (Pen. Code, § 496d, subd. (a); count I) and displaying a license plate not issued for the vehicle with the intent to avoid compliance with vehicle registration requirements, a misdemeanor (Veh. Code, § 4462.5;[1] count II). He also pled guilty to driving with a suspended license, a misdemeanor (§ 14601.1, subd. (a); count III).

Imposition of sentence was suspended and appellant was admitted to probation for five years. He was ordered to serve six months in county jail with certain credits for time served. Various fees and penalty assessments were imposed. The court issued a Minute Order and Order Granting Probation (the Sentencing Order) setting forth the sentence.

On appeal, appellant contends the jury was not properly instructed. Although we agree the court should have provided further instructions for both counts, we conclude prejudice did not occur for either count. However, we agree with the parties that the Sentencing Order fails to specify the required statutory basis for the imposed fines and penalty assessments. We remand for resentencing but otherwise affirm.

## FACTUAL BACKGROUND

I.      **Relevant Facts From The Prosecution's Case.**

In January 2013, Frank Oliveira's 1994 Chevy Silverado truck was stolen in Modesto. He estimated the Chevy was worth approximately $6,500.

On September 14, 2013, a sheriff's deputy stopped appellant in Sonora while appellant was driving a 1994 Chevy truck bearing disabled license plates and a 2014 registration sticker. The deputy discovered the disabled license plates were expired, they had been issued to a different 1994 Chevy truck belonging to someone else, and the vehicle identification number confirmed this was Oliveira's stolen Chevy. Appellant told

---

[1]      All future statutory references are to the Vehicle Code unless otherwise noted.

the deputy he did not know the truck was stolen. He said he had purchased the Chevy in March or April, paying $800 for it "to an unknown man." He claimed the seller came to his house three or four times, and appellant made payments to him. Appellant told the deputy he did not have a bill of sale, and he was unable to provide title or a release of liability.

When it had been stolen from Oliveira, the Chevy did not have disabled license plates. At trial, the deputy testified the Chevy had a "cold" license plate to a similar make and model vehicle. This was done to disguise the fact the Chevy was stolen. The deputy admitted he did not ask appellant if a bill of sale ever existed, but he also noted appellant never volunteered that information to him.

## II.     Relevant Facts From The Defense.

### A.     Testimony from appellant's girlfriend.

Carrie Lang, appellant's girlfriend of eight years, had two prior felony convictions. She said she was present at home when appellant purchased the Chevy. An acquaintance, Jeremy, brought the seller to their house. She did not know Jeremy's last name, and she did not hear negotiations between appellant and the seller. Appellant asked her to bring a piece of paper and a pen so the seller could write out a bill of sale. She did so and watched as the seller wrote a bill of sale. Lang had never seen the seller before. She put the bill of sale with other important papers in the house. She and appellant subsequently moved twice, and she could not recall at trial when she next saw the bill of sale. She had "no clue" what the license plates looked like when the Chevy was purchased.

Within a week of its purchase, the Chevy could not be driven because the back tires "locked up" and would not turn. The Chevy sat in their yard for months and appellant eventually fixed the problem. She denied ever seeing appellant changing the license plates on the Chevy or putting a registration sticker on it. She knew appellant did not go to the Department of Motor Vehicles (DMV) to register the truck, claiming they

3.

used all of their money to buy it. Once the Chevy broke down, they decided they would wait until it was fixed to register and insure it.

### B. Appellant's testimony.

Appellant was 34 years old at the time of trial. He earned money from cutting down trees for wood, doing yard work, doing dump runs for people, and recycling. He testified he purchased the Chevy in April 2013 after an acquaintance, Jeremy, brought the seller to his house after appellant "put the word out" he wanted a truck. Appellant had previously seen Jeremy at the scrap yard and at their house to discuss scraping metal. Appellant did not really know Jeremy. He said he had not seen Jeremy since the sale.

Jeremy and the seller showed up at appellant's house unannounced one day. Appellant had $1,000 in cash from the sale of wood about a week earlier. The seller, Stewart Carter, said he had a truck, which he was trying to sell for $1,100. Appellant had never met the seller before. Appellant test drove the Chevy and offered $800 for it, which was accepted. The seller said he did not have title because he lost it. Appellant asked the seller to write his name on a bill of sale. Appellant did not ask the seller for his telephone number because he did not think of it, and he did not ask to see the seller's identification. He told the jury he thought the DMV would have information about the seller if there was a problem. Appellant said he intended to go to the DMV and use the bill of sale to file for a lost title. He believed the DMV would deal with it, but he did not know the process. He told the jury this was his first private vehicle purchase, although he had purchased vehicles from dealerships. His ex-wife had always handled the paperwork with the DMV.

Appellant asked his girlfriend to bring out some paper and a pen. The seller filled out the bill of sale and appellant paid him the $800 in cash. Jeremy and the seller left by walking down the road. Appellant intended to keep the bill of sale until he could afford the registration and insurance. He planned to sell more wood to make the money, but the Chevy broke down after he did one load of wood. Appellant was able to repair the Chevy

4.

himself but it took several months to "figure it out." He had to replace the "rear end" on the Chevy, which cost $400 in parts. He needed time to obtain that money. He was able to drive the Chevy again around August 2013.

Appellant told the jury he did not recall telling the deputy that he made installment payments to purchase the Chevy. He said he paid for the Chevy in full on the day of the sale. He said he did not think about needing money for registration when he bought it because he believed the registration was still good until March 2014. He said it did not cross his mind he would need to pay insurance for the Chevy because the seller said it was insured, and then it broke down. He admitted he never went to the DMV to find out how much registration would cost, saying he was more worried about paying his rent.

Appellant said he never saw anything that would indicate the Chevy was stolen when he first inspected it. The seller had keys and appellant saw nothing in the Chevy indicating it belonged to Oliveira. Appellant saw the truck had disabled plates but he did not ask the seller about it. The seller did not appear disabled. Appellant had observed people driving cars with disabled plates when they did not appear disabled. He believed he would receive new plates from the DMV, but he did not turn in the old plates due to lack of money. He told the jury he did not know he was required to turn in the disabled plates. He said he was stopped by the deputy about four or five weeks after he repaired the Chevy and could drive it again. Appellant drove the Chevy again because it had the same registration sticker as when he bought it, and he believed the registration "was still good." He told the jury he was planning to go to the DMV on October 1 and a friend was going to loan him the needed money. Appellant told the jury he did not know the truck was stolen before he was pulled over. He denied changing the license plates.

Appellant explained he did not have the bill of sale with him when the deputy stopped him, which is why he denied having a bill of sale. He claimed he did not explain he had a bill of sale somewhere at home because he believed it did not matter. He did not think the deputy would take him home to retrieve it and he "was going to jail either way."

5.

He believed he "might have" told the deputy a business partner was going to help him pay for the Chevy's registration and insurance.

Appellant told the jury the bill of sale was missing for approximately six months after he was arrested. He had moved twice after being arrested and he did not think it was a priority to look for it. He went to court and his attorney told him to search for it, which he did. He found it in storage in a box with other paperwork, including the birth certificate of his child and other DMV paperwork. He did not know where the box was located because Lang was in residential rehabilitation for five months starting in October or November, and she was unable to tell him exactly where the box was located. He first produced the bill of sale in the pending criminal matter after the trial date was set. He said he had also tried to locate Jeremy after his arrest, but none of his friends knew what happened to him. Appellant said he did not ask his friends for Jeremy's last name.

### III. Rebuttal Testimony.

The deputy testified he was never questioned at the preliminary hearing about whether appellant had a bill of sale at his house. In March 2014, the deputy first heard about a "Stewart Carter" associated with the Chevy. The sheriff department's computer system did not have a record of that name, and the deputy contacted the Modesto police department, which also did not have that name in its system.

**DISCUSSION**

### I. The Court's Failure To Instruct Regarding Disabled License Plates Was Not Prejudicial For Counts I and II.

Appellant contends the trial court failed to instruct the jury with the applicable legal principles regarding disabled person license plates. He seeks reversal of counts I and II.

#### A. Background.

##### 1. Relevant jury instructions.

The court provided the jury with the following relevant instructions.

### a.     CALCRIM No. 1750.

Appellant was charged in Count I with receiving a stolen motor vehicle in violation of Penal Code section 496d, subdivision (a).  The prosecution had to prove the following three elements:  "One, [appellant] received, concealed or withheld from its owner or aided and abetted in concealing or withholding from its owner property that had been stolen; two, when [appellant] received, concealed or withheld or aided in concealing or withholding the property he knew that the property had been stolen; and three, [appellant] actually knew of the presence of the property."

### b.     Unlawful display of evidence of registration.

Appellant was charged in Count II with unlawful display of evidence of registration.  To be guilty, he must have:  "One, displayed a license plate upon a vehicle that is not issued for that vehicle; two, displayed the license plate upon a vehicle that was not issued for that vehicle with the intent to avoid compliance with Vehicle Code registration requirements."

### c.     CALCRIM No. 3406.

Appellant was not guilty of receiving a stolen vehicle and unlawful display of registration "if he did not have the intent or mental state required to commit the crime because he did not know of a fact or mistakenly believed a fact."  If appellant's conduct would have been lawful under the facts as he believed them to be, he did not commit the crime of receiving a stolen vehicle and unlawful display of registration.

The jurors were told appellant did not have the required mental state to be guilty of receiving stolen property if they found he believed the vehicle was not stolen.  Likewise, he did not have the specific intent required to be guilty of unlawful display of registration if they found he believed the license plate on the vehicle and the registration sticker were valid.

The jurors were told they must find appellant not guilty of the crimes charged in Counts I and II if they had a reasonable doubt about whether appellant had the specific

7.

intent or mental state required for receiving stolen property or unlawful display of registration.

### 2.    Relevant closing arguments.

The prosecutor told the jury that appellant's story was not believable and the facts suggested he knew the Chevy was stolen when he possessed it. Oliveira valued the Chevy at approximately $6,000 to $6,500, but appellant only paid $800. When stopped, appellant told the deputy he made three to four payments to some guy he did not know, and he said he did not have a bill of sale. Appellant failed to mention a bill of sale even when getting arrested. He produced the bill of sale six or seven months after he was charged with the crime. Appellant did not know the seller and did not have any contact information for him. He did not know Jeremy's last name and was unable to locate Jeremy after the sale despite seeing him before. The prosecutor stated the following:

> "So [seller] brings you this truck out of the blue when you're working in your front yard -- just happened to have $800 in your pocket when you're working on wood in the front yard, keep in mind -- just happened. Shows up in this truck -- hey, you want this truck? Yeah, I will buy this truck. Oh, I need a bill of sale; but, listen, I don't need any other contact information in case something is wrong with this, even though it's got the disabled plates on it and you don't look disabled. Red flags shooting up in the air. Then they leave and they walk away."

The prosecutor asked the jurors to use their common sense and experience in evaluating the credibility of the witnesses, contending neither Oliveira nor the deputy had any reason to lie. In contrast, Lang would lie because she was appellant's girlfriend of eight years and she was a convicted felon. Appellant would lie to get away with it. He obtained the Chevy without title, release of liability or some proof of ownership. He had no contact information for the seller. He never went to the DMV, claiming he had no experience in doing that. The prosecutor questioned how a 34-year-old man with a high school education would think a slip of paper was sufficient. She pointed out appellant's inconsistent statements: he told the deputy he had no bill of sale and he made installment

8.

payments, but when trial came, he had a bill of sale and said he made a lump sum payment. The deputy was unable to locate the seller's name in the sheriff department's computer, and the Modesto police department had no information on him.

Regarding count II, the prosecutor stated:

> "Count 2, the false registration. On the truck were these license plates, disabled -- can't be any clearer -- blue with the wheelchair disabled plate 2014 sticker. And defendant testifies: Well, no, Mr. Stewart Carter -- he didn't look disabled. Raise any flags?

> "Are you disabled? No. You drove the car with disabled plates? Yeah, well, I thought I would just turn them in when I registered the car. I didn't have money for registration of the car. But his friend was going to lend him money October 1st, just so happens to be after the date of arrest. But his mom helped him [buy] the Echo car and he could pay his rent whenever he wanted to. So what is it? What is the story?"

The prosecutor urged the jury to find appellant guilty because his story was not credible.

In rebuttal arguments, the prosecutor said appellant knew the Chevy was stolen and the plates did not match. The prosecutor proposed it was appellant who put the disabled plates on the Chevy in order to disguise it was stolen. The prosecutor stated appellant lied when he testified, and the bill of sale was fabricated.

**B.      Standard of review.**

On appeal, we independently review a claim of instructional error. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) We must first determine the applicable law and then determine the meaning of the instructions. (*People v. Johnson* (2009) 180 Cal.App.4th 702, 707.) The test is whether the trial court fully and fairly instructed the jury on the applicable law. (*Ibid.*)

**C.      Analysis.**

Appellant argues the trial court failed in its sua sponte duty to instruct the jury regarding disabled person license plates, which came out as evidence during trial and was

9.

mentioned by the prosecutor during closing arguments.  He contends the jurors would have relied on their personal and subjective knowledge, beliefs or understandings about the law applicable to disabled license plates, along with the prosecutor's implications. He asserts the jurors did not know whether (1) a disabled license plate may be issued to a person who does not appear disabled but may have a disability (potentially like the seller); (2) whether a person who is not disabled may legally drive a car bearing a disabled license plate; and (3) whether a non-disabled person must immediately surrender disabled plates to the DMV upon purchasing a vehicle with them.  This lack of instruction affected the jurors' ability to assess whether appellant knew either that: (1) the disabled plates where invalid when he bought the Chevy; (2) he could not legally display the disabled plates on the Chevy after buying it; or (3) he was required to immediately turn in the disabled plates to DMV.

Respondent initially contends this issue is forfeited on appeal because appellant failed to request any amplifying language relative to the jury instructions given for counts I and II.  Respondent also asserts this claim fails on the merits, arguing the trial court had no sua sponte duty to instruct because the statutory language in both relevant statutes do not include the words "disabled plates."  Finally, respondent maintains the prosecutor only briefly referred to disabled plates during closing arguments, and instead focused on other facts to prove guilt, making any error harmless.

### 1.     The trial court had a sua sponte duty to instruct.

A trial court has a sua sponte duty to give instruction regarding general principles of law relevant to the issues which are raised by the evidence.  (*People v. Kimble* (1988) 44 Cal.3d 480, 503.)  These principles of law are those necessary for the jury to understand the case, and which are closely and openly connected with the facts before the court.  (*Ibid.*)

Here, appellant testified he did not ask the seller about the disabled plates when he purchased the Chevy, but he believed he would get new plates when he went to the DMV

10.

because he is not disabled. He told the prosecutor the seller did not appear disabled, and agreed he had seen a person drive a car with disabled license plates without appearing disabled. Appellant told the prosecutor he did not turn in the disabled plates to DMV because he did not have the money, and he said he did not realize he had to do so.

Based on this trial evidence, the principles of law regarding disabled license plates was closely and openly connected with the facts before the trial court regarding whether appellant knew the Chevy had been stolen or his intent to register the Chevy. The trial court should have instructed the jury regarding the law applicable to disabled license plates. Because the trial court had a sua sponte duty to instruct, appellant did not forfeit this issue on appeal. (See generally *People v. Roberge* (2003) 29 Cal.4th 979, 988 [a trial court must instruct on general principles of law even in the absence of a request].) As such, we analyze whether prejudice occurred.

### 2. Prejudice did not occur.

When a trial court fails to properly instruct the jury, reversal is required if it is reasonably probable a result more favorable to the defendant would have occurred in the absence of the error. (*People v. Wharton* (1991) 53 Cal.3d 522, 571.)

As appellant points out, the definition of a "disabled person" under the Vehicle Code includes persons who may not have a readily observable disabling medical condition, including those suffering from lung or cardiovascular disease. (§ 295.5, subds. (a)-(d).) There is no law prohibiting a non-disabled person from driving a vehicle bearing disabled plates or a placard so long as the vehicle is not parked in disabled spaces, except when the vehicle is used to transport a disabled person. (§ 4461, subd. (d).) A disabled license plate must be returned to the DMV within 60 days upon the death of the disabled person, or upon the expiration of the vehicle registration, whichever occurs first. (§ 5007, subd. (f).)

Appellant contends he was prejudiced because the jurors would have realized the prosecutor was wrong about the law if they had been properly instructed. He argues the

11.

prosecution claimed appellant must have known: (1) the disabled plates were invalid at the time he bought the Chevy; (2) he could not drive the Chevy with disabled plates; and (3) he was required to surrender the disabled plates immediately to the DMV. He asserts the instruction regarding mistake of fact under CALCRIM No. 3406 did not cure any prejudice because the jurors were not provided with the law needed to evaluate accurately the lawfulness of his conduct or the sincerity of his beliefs. He maintains there was a reasonable chance of an acquittal or hung jury on both counts. We disagree.

The prosecutor's closing arguments covered 11 pages in the record. She mentioned the disabled license plates twice, which occurred over a span of three pages. The prosecutor's references to the disabled license plates were brief. The prosecutor did not emphasize the disabled license plates as a basis for conviction, but, instead, focused on the unreasonableness of appellant's testimony.

When stopped, appellant told the deputy he made three to four payments to some guy he did not know, and he did not have a bill of sale. Appellant failed to mention a bill of sale even when getting arrested. However, he produced a bill of sale months after he was charged with the crime. He told the jury he did not make payments, and the seller appeared unannounced on a day he had sufficient cash for the purchase. Appellant's testimony lacked credibility and strongly suggests appellant knew the Chevy was stolen when he possessed it.

The facts also suggest appellant displayed a license plate not issued for the vehicle with the intent to avoid compliance with vehicle registration requirements. Appellant never testified he believed he was excused from registering the Chevy. To the contrary, he told the jury he believed the Chevy was properly registered through March 2014 because of the registration sticker and he drove it because the sticker was still good. However, he bought the Chevy without contact information for the seller and he never went to the DMV, claiming a recurring inability to pay. Despite telling the jury he believed the Chevy was properly registered, he also told the jury he had a loan arranged

to pay for everything with the DMV on or about October 1, but he was arrested in the interim. In light of the jury's verdicts, it is apparent the jury found appellant's testimony unbelievable.

Appellant's testimony lacked credibility regarding his payment for the Chevy, his receipt of a bill of sale, and his intent to appear at the DMV to register the Chevy. After an examination of the entire case, we cannot say that the error complained of resulted in a miscarriage of justice. There is no reasonable chance a different outcome would have resulted if the jury had received instruction regarding disabled license plates.

II.     **The Court's Failure To Give Clarifying Instruction On Vehicle Code Section 4462.5 Was Not Prejudicial For Count II.**

Appellant argues the trial court failed its sua sponte duty to give certain amplifying or clarifying instructions in count II.

A.      **Background.**

In count II, the jury found appellant guilty of violating section 4462.5, which reads: "Every person who commits a violation of subdivision (b) of Section 4462, with intent to avoid compliance with vehicle registration requirements of Article 1 (commencing with Section 4000) of Chapter 1 or Article 1 (commencing with Section 5600) of Chapter 2, is guilty of a misdemeanor." (§ 4462.5.) Section 4462, subdivision (b), prohibits a person from displaying upon a vehicle a license plate not issued for that vehicle or not otherwise lawfully used under the Vehicle Code.

Regarding Count II, the jury was instructed that to be guilty, appellant must have: "One, displayed a license plate upon a vehicle that is not issued for that vehicle; two, displayed the license plate upon a vehicle that was not issued for that vehicle with the intent to avoid compliance with Vehicle Code registration requirements."

B.      **Analysis.**

Appellant contends the jury could not understand the statutory language of section 4462.5, asserting the jury was not told what "vehicle registration requirements" he had

13.

specifically intended to avoid. He asserts the trial court was required to examine the approximate 40 sections contained in the Vehicle Code Articles referenced in section 4462.5, determine which applied, and then give appropriate instruction for each applicable provision.

A trial court has a sua sponte duty to instruct a jury when a statutory term " 'does not have a plain, unambiguous meaning,' has a 'particular and restricted meaning' [citation], or has a technical meaning peculiar to the law or an area of the law [citation]." (*People v. Roberge, supra,* 29 Cal.4th at p. 988.)

We agree with appellant that the term "vehicle registration requirements" is not plain and unambiguous. This term has a technical meaning peculiar to this area of law. It is reasonably foreseeable not all jurors fully understood the meaning of this term. As such, the trial court was obligated to provide further instruction to the jury. Because the trial court failed to provide clarification, we must analyze whether prejudice resulted.

A jury instruction that improperly describes or omits an element of an offense is reviewed to determine whether it appears beyond a reasonable doubt the instructional error did not contribute to the jury's verdict. (*People v. Flood* (1998) 18 Cal.4th 470, 502-503, 504.) Appellant argues the trial court should have instructed on the following specific legal concepts:

First, a vehicle must not be driven unless it is registered and appropriate fees are paid (§ 4000, subd. (a)(1)). Appellant argues the 2014 registration sticker on the Chevy suggested the registration was valid until March 2014, and there was no evidence he knew that registration had not been paid.

We find this contention unpersuasive. Appellant testified he knew about the requirements to register the Chevy and he admitted he never went to the DMV to find out how much registration would cost. Despite claiming a belief he thought the registration was valid through March 2014, appellant inconsistently testified he was going to use a

14.

loan from a friend to go to the DMV on or about October 1, but he was arrested in the interim.

Second, a vehicle must not be driven if it has been registered in violation of the smog inspection statutes (§§ 4000, subd. (b); 4000.1, subd. (a)), and some vehicles are exempt from the smog inspection requirements (Health & Saf. Code, § 44011, subd. (a)(1)-(8)). Appellant asserts jurors who owned vehicles were likely generally aware of the smog certificate requirements and would have noticed there was no evidence he had complied with their subjective concept of the law. He believes the jurors might have reasonably concluded he failed to confirm the Chevy had passed smog before he bought it. He also notes no evidence was presented regarding whether the Chevy might qualify as an exempt vehicle, which could have caused jurors to infer appellant had failed to comply with their subjective and incomplete understanding of what the smog certification laws required.

We find these arguments without merit. No evidence was introduced regarding smog requirements, and it is pure conjecture to speculate what the jurors believed.

Third, to transfer title in a vehicle either the transferee must deliver a properly endorsed certificate of ownership to the DMV with proper fees, or the transferor must deliver to the DMV the appropriate documents for the registration or transfer of registration (§ 5600, subd. (a)). Appellant contends the law did not necessarily require him to do anything at the DMV to complete the transaction because the seller could have completed a transfer of registration to him.

We reject this argument because no evidence was introduced that appellant believed the seller was going to transfer registration to him relieving him of any further obligation. To the contrary, appellant said he planned to go to the DMV to register the Chevy, and he offered various excuses to the jury for his failure to do so. In rendering its verdict, it is apparent the jury rejected appellant's explanations.

15.

Fourth, a person may apply for a duplicate title if the original is lost (§ 4459). Appellant maintains the jury might have concluded he was not lying about planning to obtain duplicate title, and his failure to do so resulted not from a specific intent to avoid compliance with the law, but from either his poverty and/or his misunderstanding of what the DMV required to issue duplicate title.

This argument is unpersuasive. Appellant possessed the Chevy for at least five months, if not longer. During that span, he took no steps to contact the DMV to file for a duplicate title. His testimony about a future loan from a friend lacked credibility.

Finally, appellant asserts the vehicle registration laws incorporated in section 4462.5 are those in article 1 of chapter 1 (sections 4000 through 4023), or article 1 of chapter 2 (sections 5600 through 5604.5). He claims his alleged violation of the disabled plate laws were not a valid basis for criminal liability under section 4462.5.

We reject this contention. Although the term "vehicle registration requirements" was not further clarified, the jury was instructed that to be guilty, appellant must have: "One, displayed a license plate upon a vehicle that is not issued for that vehicle; two, displayed the license plate upon a vehicle that was not issued for that vehicle with the intent to avoid compliance with Vehicle Code registration requirements." The instruction provided for count II correctly stated the basis for criminal liability under section 4462.5, as clarified by section 4462, subdivision (b). Based on its verdicts, it is apparent the jury did not find appellant's testimony credible that he was going to appear at the DMV to register the Chevy.

Based on this record, the trial court's failure to instruct regarding the term "vehicle registration requirements" was harmless. It is beyond a reasonable doubt that any failure to clarify this term did not contribute to the jury's verdicts.

16.

**III.    This Matter Must Be Remanded For The Trial Court To Specify The Statutory Basis For The Fees, Fines, And Penalties Imposed.**

The parties agree, as do we, that a remand is necessary for the trial court to state the statutory basis for each fine and fee imposed under paragraph 9 of the Sentencing Order.

All fines, fees and penalties imposed must be listed in the abstract of judgment with the statutory basis for the amounts.  (*People v. Johnson* (2015) 234 Cal.App.4th 1432, 1459.)  When an abstract of judgment is not issued, the trial court must still furnish a commitment document containing similar content required for an abstract of judgment.  (*People v. Eddards* (2008) 162 Cal.App.4th 712, 718.)

Here, paragraph 9 of the Sentencing Order ordered appellant to "[p]ay a fine of $1,070.00 for Count I, $700.00 for Count II, and $1,240.00 for Count III, including penalty assessment payable to the Office of Revenue Recovery at a rate and time to be determine by the Office of Revenue Recovery."  Based on this record, it is impossible to determine the statutory basis for the fees and assessments imposed.  On remand, the trial court shall specify the amounts and statutory basis for the imposition of each fine and penalty assessment.

## DISPOSITION

The matter is remanded to the trial court for resentencing consistent with this opinion.  The judgment is otherwise affirmed.

17.